WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America ex rel.<br>W. Austine Sallade,<br><br>        Plaintiff,<br><br>vs.<br><br>Orbital Sciences Corporation,<br><br>        Defendant. | No. CV05-0604-PHX-NVW |

      The court has considered Defendant Orbital Sciences Corporation's ("Orbital") Motion to Dismiss Counts V, VI, and VII of the First Amended Complaint for Failure to Plead Fraud with Particularity pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Doc. # 45).

**I.  Background**

      On February 23, 2005, Plaintiff W. Austin Sallade ("Sallade") filed an action against Orbital in the name of the United States Government under the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq*. Sallade's original complaint alleged seven counts of FCA and Truth in Negotiations Act ("TINA"), 10 U.S.C. § 2306a, violations committed by Orbital, who moved to dismiss the Complaint for failure to plead fraud with specificity. The court denied that motion with respect to Counts I through IV and granted

1  it with respect to Counts V through VII.  Sallade then submitted his First Amended
2  Complaint (Doc. # 44) and Orbital again moved to dismiss Counts V through VII.

3  Sallade's original Count V alleged that under the GMD subcontract Orbital
4  directly bills Boeing, and ultimately the U.S. Government, for "supplier management"
5  and "supplier quality" personnel, even though that personnel actually perform general,
6  multi-contract functions and therefore should be billed on an indirect cost basis.  (Doc. #
7  1 at ¶¶ 155–63.)  In his amended complaint, he adds an example of such improper billing
8  for quality personnel.  Allegedly, during fiscal years 2003 through 2005, Orbital hired
9  "software management" and "procedural personnel" to work towards obtaining an
10 "International Software Quality" certification for the company.  (Doc. # 44 at ¶ 172.)  In
11 July of 2005, the director of Orbital's software development department, Mr. Bill
12 Ludwig, purportedly told Sallade that the company had directly billed millions of dollars
13 in costs from this project to Boeing under the Ground Missile Defense (GMD) contract.
14 (*Id.* ¶ 179.)  Further, Sallade maintains that Mr. Charlie Whitmeyer, Vice President of
15 Quality, said that during the same period the company's senior management had
16 instructed him to hire additional quality personnel and charge the cost directly to the
17 GMD contract.  (*Id.* ¶ 185.)  According to Sallade, the U.S. Government's damages from
18 this improper direct billing of labor costs amount to at least $1 million.  (*Id.* ¶ 186.)

19 Count VI of Sallade's amended complaint alleges that Orbital violated TINA by
20 failing to report certain "cost and pricing data" so that it could inflate its expected costs
21 on a Boeing subcontract, for which it was then negotiating a price.  (*Id.* ¶¶ 187–202.)  His
22 allegations are largely the same as they were in his original complaint, except that he
23 alleges that by virtue of the TINA violation "Orbital was able to obtain inflated cost
24 recovery from Boeing under the newly definitized contract . . . , obtained higher
25 negotiated Target Costs and Fees . . . [and] realized inflated cost recovery of no less than
26 $1,000,000 under its CE 1 Subcontracts with Boeing."  (*Id.* ¶¶ 200–201.)

27 In Count VII of the amended complaint Sallade again alleges that Orbital
28 improperly charges the U.S. Government for spare and excess materials before it needs

1  the materials to perform its contracts.  (*Id.* ¶ 204.)  This time he adds that the charges
2  occurred between 2003 and 2005 and were billed to the GMD and Orbital Sub-Orbital
3  Program (OSP) contracts.  He also adds that "Orbital's senior managers, including Jim
4  Utter, and its Program Managers knew about the practice and encouraged it."  (*Id.* ¶ 212.)

5  The standard for pleading an FCA violation under Rules 9(b) and 12(b)(6) of the
6  Federal Rules of Civil Procedure was explained in the court's previous order, and for
7  brevity's sake will not be repeated here.  *United States ex rel. Sallade v. Orbital Sciences*
8  *Corp.*, No. SC05-00604-PHX-NVW, 2008 U.S. Dist. LEXIS 4332 at *8–11, 2008 WL
9  114888 at *3–4 (D. Ariz. Jan. 4, 2008).

10 **II.  Discussion**

11  By including a specific example of a false claim submitted to the government,
12  Sallade has successfully met Rule 9(b)'s heightened pleading standard for Count V of the
13  amended complaint.  The facts alleged identify a particular software quality certification
14  project for which Orbital hired new employees, and a particular software development
15  manager who stated that the costs were being directly billed to Boeing in July of 2005.
16  That information will allow Orbital to identify the project and the allegedly false claim to
17  the government.  Sallade cites this particular false claim as an example of a broader
18  fraudulent scheme wherein Orbital's Vice President of Quality, Mr. Charlie Whitmeyer,
19  was ordered to hire additional quality personnel and directly bill the costs to the GMD
20  contract even though the personnel were to perform general, multi-contract functions.
21  Sallade may therefore proceed to discovery on Orbital's direct billing for additional
22  quality personnel authorized to be hired by Mr. Whitmeyer in fiscal years 2003 through
23  2005.  However, Sallade may not proceed to discovery on direct billing for any other
24  personnel arguably referenced in Count V, because such fraudulent billing has not been
25  plead with particularity and is not represented by the specific example proffered by
26  Sallade.

27  Counts VI and VII, on the other hand, still do not meet Rule 9(b)'s heightened
28  pleading requirements.  Despite the explanation given in the order dismissing Sallade's

- 3 -

1  original complaint, Count VI again fails to plead with particularity that Orbital submitted
2  a false claim for payment knowing that it had negotiated the CE 1 contract price in
3  violation of TINA.  Sallade's bare allegation that Orbital "was able to obtain inflated cost
4  recovery" does not sufficiently identify a particular false claim for payment under the
5  contract.  At oral argument, Sallade requested leave to again amend his complaint to
6  allege that Orbital did in fact submit invoices on the CE 1 contract.  He contends that
7  every invoice Orbital submitted on the CE 1 contract reflected the inflated amount it was
8  able to negotiate by fraudulently withholding the "cost and pricing data."  Leave to
9  amend is granted liberally, and should be granted in this case.  F.R.C.P. 15(a).

10  However, Sallade will not be able to successfully plead an FCA violation in Count
11  VI merely by alleging that every invoice Orbital submitted under the CE 1 contract was
12  fraudulent.  This kind of general allegation assumes that Orbital actually submitted an
13  invoice and does not satisfy Rule 9(b).  Sallade must plead the submission of a false claim
14  for payment *with particularity*.  In other words, he must plead the "who, what, when,
15  where, and how" of the submission of at least one invoice containing the fraudulently
16  negotiated costs.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)
17  (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  This point bears
18  emphasis because Sallade has alleged virtually nothing specific about what Orbital did
19  after the contract was negotiated.  Sallade does not appear to have first-hand knowledge
20  that Orbital billed at an inflated rate due to the TINA violation, but rather infers it from
21  the direction of Mr. Utter that the cost under-runs not be disclosed until after the CE 1
22  negotiations closed.  The inference that Orbital succeeded in doing what Mr. Utter
23  allegedly planned to do cannot be stretched too far.  Sallade must be careful to ensure that
24  his allegations about what happened after the close of the CE 1 contract negotiations
25  comport with the requirements of Federal Rule of Civil Procedure 11(b)(3).

26  With respect to Count VII, merely adding the years 2003 through 2005 and stating
27  that Orbital billed certain unidentified materials to the OMD contract does not satisfy
28  Rule 9(b).  As the previous order made clear, Sallade had to come forward with more

- 4 -

1  specific information to identify some of the materials and when they were directly billed
2  to the government to proceed to discovery on this allegedly fraudulent scheme.  This he
3  did not do, and when asked at oral argument whether he had anything more to add, he
4  stated that he did not.  Granting leave to amend this count again would therefore be futile,
5  and it is dismissed with prejudice.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.
6  1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to
7  amend."); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)
8  ("The district court's discretion to deny leave to amend is particularly broad where
9  plaintiff has previously amended the complaint.").

10  After further consideration, the court concludes that it partially erred in its order of
11  January 4, 2008 by denying Orbital's motion to dismiss Count IV of the original
12  complaint.  *United States ex rel. Sallade*, 2008 U.S. Dist. LEXIS 4332 at *15, 2008 WL
13  114888 at *5.  Count IV did allege a specific false claim to the government with
14  particularity.  Specifically, it alleged that Orbital intentionally misinterpreted the OSP1
15  contract to allow it to bill the government directly for certain commonly used facilities
16  and equipment, which it reclassified as "Special Test Equipment" after a government
17  inquiry.  (Doc. # 1 ¶¶ 139–146.)  This is just another example of the same type of
18  fraudulent direct billing for common facilities and equipment that is alleged in Count III,
19  which was upheld in the court's order.

20  The courts' error was in concluding that the false claim just described was
21  characteristic of the rest of the fraudulent scheme alleged in Count IV.  That count further
22  alleged that Orbital competed for and won the OSP2 contract without having to include
23  the cost of the necessary facilities, equipment, and material in its bid because the
24  government had already paid for it.  (Doc. # 1, ¶¶ 147–53.)   In other words, Orbital's bid
25  on the OSP2 was inappropriately low, and consequently, any subsequent invoices on the
26  OSP2 contract were for less than they should have been.  That allegation does not state a
27  claim under the FCA.  The FCA does not prohibit fraud in the negotiation of government
28  contracts as such; it prohibits the presentation of false claims for payment.  It is not an

1  FCA violation to charge the government less than an appropriate amount on a contract.
2  That flaw in Count IV obviously cannot be cured by amendment, so Count IV is
3  dismissed with prejudice, except that the allegations in paragraphs 139 through 146 of the
4  original complaint can be re-alleged as part of Count III.

5      IT IS THEREFORE ORDERED that Defendant Orbital Sciences Corporation's
6  ("Orbital") Motion to Dismiss for Failure to Plead Fraud with Particularity pursuant to
7  Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Doc. # 45) is granted with respect to
8  Counts VI and VII and denied with respect to Count V.  Count VI is dismissed with leave
9  to amend, and Count VII is dismissed with prejudice.

10      IT IS FURTHER ORDERED that the court's order of January 4, 2008 is vacated
11  with respect to Count IV, which is dismissed with prejudice, except that the allegations in
12  paragraphs 139 through 146 of the original complaint can be re-alleged as part of Count
13  III.

14      IT IS FURTHER ORDERED that Count VI will be dismissed with prejudice if an
15  amended complaint is not filed by March 24, 2008.

16      DATED this 14th day of March, 2008.

_____
Neil V. Wake
United States District Judge